MUTUAL BUILDING AND LOAN
ASSOCIATION, Appellant,

v.

W. Sale LEWIS, Savings and Loan Com-
missioner of Texas, et al., Appellees.

No. 12808.

Court of Civil Appeals of Texas,
Austin.

Oct. 11, 1978.

Gary Evatt, Long, Evatt & Webber, Austin, for appellant.

John L. Hill, Atty. Gen., Thomas A. Rutledge, Asst. Atty. Gen., Austin, for appellee Savings and Loan Commissioner.

Richard D. Coan, Coan & Terrell, Stephenville, for appellee Stephenville Savings and Loan Association.

SHANNON, Justice.

Stephenville Savings and Loan Association filed an application with the Savings and Loan Commissioner of Texas to establish a branch office in Weatherford, Parker County, Texas. The Commissioner after hearing entered an order approving the branch application.

Appellant, Mutual Building and Loan Association, a protestant before the Commissioner, filed suit in the district court of Travis County to set aside the order of the Commissioner. Appellees are Stephenville Savings and Loan Association and the Commissioner. The district court entered judgment affirming the Commissioner's order. We will affirm the judgment of the district court.

Appellant's first point of error is that the judgment is erroneous in that the Commissioner failed to set forth in the order a concise and explicit statement of the underlying facts supporting the findings on the ultimate statutory and regulatory criteria.

Texas Rev.Civ.Stat.Ann. art. 852a, § 11.-11(4) (1964) provides that the Commissioner's order ". . . shall include findings of fact and conclusions of law, separately stated, on all issues material to the decision reached. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings."

Likewise, the Administrative Procedure and Texas Register Act, Tex.Rev.Civ.Stat. Ann. art. 6252–13a, § 16(b) (Supp.1978), provides in part, "A final decision must include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, must be accompanied by a concise and explicit statement of the underlying facts supporting the findings."

The Commissioner's findings of fact concerning statutory requirements and the underlying facts supporting findings of fact are set out below.[1] The "underlying facts"

1. "FINDINGS OF FACT CONCERNING STATUTORY REQUIREMENTS

A. Pursuant to Rule 2.4(.004) *Rules and Regulations for the Savings and Loan Associations of Texas,* the Commissioner affirmatively finds from the data furnished with the application, the evidence adduced at the hearing and his official records that:

1. The aggregate amount of the loss reserves, surplus and Permanent Reserve Fund Stock of the Applying Association is equal to at least three percent (3%) of its savings liability.

2. That the Applying Association has had a profitable operation for the three year period next preceding the filing of its application after paying operating expense, making statutory allocations to loss reserves and paying dividends on savings accounts out of its earnings during such period;

3. That the Applying Association has no serious supervisory problems which would affect its ability to properly operate such office;

4. That the proposed operation will not unduly harm any other association operating in the vicinity of the proposed location;

5. That the Applying Association will provide a separate enclosed office area for the proposed branch office;

6. That the proposed branch office will be supervised by qualified full-time management;

7. That there is a public need for the proposed branch office and that the volume of business in the community in which the proposed branch office will conduct its business is such as to indicate a profitable operation to the association within a reasonable period of time.

8. That the character, responsibility and general fitness of the management and of the directors of the Applying Association are such as to command confidence and warrant belief that the business of the Association and the proposed branch office will be honestly and efficiently conducted in accordance with the intent and purpose of the Texas Savings and Loan Act.

B. Underlying facts supporting the foregoing findings were developed in the testimony of the witnesses and the exhibits identified, authenticated, offered and received into evidence at the hearing on November 18, 1976, before the Hearing Officer and the Commissioner having read and reviewed such record finds the following underlying facts:

1. In support of the findings set out above in paragraph II–A–1, the Commissioner finds that the witness, H. T. Latham, President of the Stephenville Savings and Loan Association of Stephenville, Texas, testified that he had prepared from the Association's records the exhibit of the current percentage of the aggregate amount of the loss reserves, surplus and permanent reserve fund stock of the Savings and Loan Association as to its savings liability. Said exhibit was marked as Br.Ex. 3 and admitted as evidence. The exhibit showed that as of October 13, 1876, the actual percentage exceeded 3% in that it was 6.73%. Mr. Latham testified that the Stephenville Savings and Loan Association for three years prior to the application had also maintained a percentage that would qualify within the requirements of Reg. 2.4a, *Rules and Regulations* of the Savings and Loan Association of Texas (H.R. 19–20).

2. In support of the finding of paragraph II–A–2, the Commissioner finds that the witness, H. T. Latham, testified that Stephenville Savings and Loan Association had had a profit-

able operation for the three year period next preceding the filing of its application after paying operating expenses, making statutory allocations to loss reserves and paying dividends on savings accounts of its earnings during such period and thereafter, identified an exhibit with such information which was marked, introduced and accepted into evidence (H.R. 20–21; Br.Ex. 3). Mr. Latham further testified and identified for the record a monthly report of the Stephenville Savings and Loan Association, being a condensed statement of condition as of October 31, 1976. Said report was marked and admitted in evidence (Br.Ex. 4). The exhibit indicated that as of October 31, 1976, the Stephenville Savings and Loan Association was operating in a profitable condition (H.R. 21–22).

3. In support of the Commissioner's finding in II–A–3, the witness, H. T. Latham, testified that the Applying Association had no serious supervisory problems which would affect its ability to operate a branch office and further testified and gave the names of the managing officers and members of the Board of Directors of the Stephenville Savings and Loan Association. He identified himself as President and Managing Officer; Brad Thompson as Senior Vice President and a member of the Board of Directors who operates a general insurance business in Stephenville and conducts a gallery of original art; James C. Ramsay as Vice President and a member of the Board of Directors; J. W. Autry as Vice President and Dean of Tarleton State University, Stephenville, Texas and a member of the Board of Directors; Carl E. Crimmins, a Public Accountant in Stephenville, Texas, Secretary-Treasurer of the Association and a member of the Board of Directors; Dr. Bruce Terrill, a practicing physician in Dallas County, Texas, formerly of Stephenville, Texas, and a member of the Board of Directors. He testified that all of the Directors and Officers of the Association enjoy a good reputation in the community in which they reside and were leading businessmen within the community and were of such character, responsibility, general fitness and honesty in the community as to qualify within the requirements of the Rules and Regulations of the Savings and Loan Commission (H.R. 20, 22, 23, 24). Mr. Latham further testified that the Association did not have any serious supervisory problems which would affect its ability to properly operate a branch office in Parker County, Texas (H.R. 26).

4. In support of the finding of the Commissioner in Paragraph II–A–4 above, the Commissioner finds the witness, H. T. Latham, testified that he had 26 years of experience in the Savings and Loan industry and that he had an opinion as to whether or not the branch application would unduly harm any association operating in the vicinity of the proposed location and that in his opinion it would not (H.R. 26–27). Additionally, the Applying Association called Dr. Allen Self, a qualified economist, appearing as an expert witness in behalf of the Applying Association. Dr. Self testified that he had accumulated and examined materials and information about the proposed branch office and that he had an opinion as to the question of undue harm to any existing association within the vicinity of the proposed location and that in his opinion, the proposed operation of the branch office would not unduly harm any other association operating in the vicinity of the proposed location (H.R. 262–263).

5. In support of the Commissioner's findings in Paragraph II–A–5, the witness, H. T. Latham, testified that he was familiar with the regulations and requirements of the Savings and Loan Commission concerning the requirement of separate enclosed office and that the Applying Association would provide such an office for the proposed branch office (H.R. 15, 91).

6. In support of the Commissioner's findings in Paragraph II–A–6, the witness, H. T. Latham, testified that he was also familiar with the Rules and Regulations concerning the requirements of the proposed branch office to be supervised by qualified full time management and stated that Stephenville Savings and Loan Association was in a position to provide, and would provide, qualified full-time management to supervise a branch office (H.R. 16).

7. In support of the Commissioner's findings in Paragraph II–A–7, on the issue of public need, the Commissioner finds that the witness, H. T. Latham, expressed an opinion, relying upon his 26 years experience in the Savings and Loan industry, that there was a public need in the proposed community and that in his opinion the proposed branch would have a profitable operation within a reasonable time (H.R. 28–29).

Further, Dr. Allen Self, the expert witness called on behalf of the Applying Association, testified that he had an opinion concerning public need and that in his opinion there was a substantial and obvious need for an additional Savings and Loan branch facility of the kind applied for by Stephenville Savings and Loan Association in Parker County, Texas. Dr. Self further testified, that in his opinion, if a branch office were granted to the Stephenville Savings and Loan Association, that a properly managed Branch Savings and Loan facility located in Weatherford would be profitable in a reasonable period of time (H.R. 260, 261). Additionally, underlying facts as to public need are set out hereinafter.

8. The witness, H. T. Latham, testified concerning the character, responsibility and general fitness of the management and directors of the Applying Association and stated that they would be of such fitness as to command confidence and warrant belief in the public that the

business of the Association and the proposed branch would be honestly and efficiently conducted (H.R. 23, 24, 25).

C. The Commissioner further finds that the witness, H. T. Latham, has 26 years experience with the Savings and Loan industry (H.R. 7). That he has participated in the charter organization of Savings and Loan Associations in the State of Texas as well as applications for branch offices (H.R. 8–9). That he has appeared before the Savings and Loan Commission on other hearings, that he had been a participant in the organization of the Stephenville Savings and Loan Association's charter in 1955 (H.R. 8), that he had been with the Stephenville Savings and Loan Association since its inception in 1955 and that in that period of time that the Association had enjoyed a favorable growth in that at the end of 10 years of operation, the Association had approximately ten million dollars ($10,000,000.00) in total assets and at the present time after 21 years of operation the total assets were now in excess of forty seven million dollars ($47,000,000.00); that the Association currently has branch offices in Dublin and Granbury, Texas and authority to open a branch in Hico, Texas. He presented an exhibit showing the growth of the Association from December, 1955 through October, 1976 which was marked and introduced into evidence (H.R. 10, Br.Ex. 1).

Mr. Latham further testified that the Stephenville Savings and Loan Association maintained records in its ordinary course of business and that such records reflected the activities and conditions of Stephenville Savings and Loan Association. That as Managing Officer of the Association, he had control and access to such records and he considered them to be accurate as they were audited regularly by both State and Federal authorities as well as independent audits (H.R. 16, 17, 18). He stated that he had relied upon such records and information in testifying before the Savings and Loan Commission and the Commissioner is of the opinion, and finds, that the testimony of the witness, H. T. Latham, is credible, reliable and true and adopts such testimony in support of his findings of fact.

D. The Commissioner finds that Dr. Allen Self is a duly qualified economist, entitled to testify as an expert witness and has appeared before the Savings and Loan Commission in other hearings (H.R. 143). That he had conducted an economic study of the proposed area as shown by a map marked as an exhibit and introduced into evidence (H.R. 150–151, Br.Ex. 8).

The Commissioner hereby adopts his testimony and relies upon the opinions and conclusions reached by Dr. Self as being reliable and that the record as a whole and the various data and sources of information cited heretofore and hereinafter, as developed at the hearing, support the reasonableness and correctness of the opinions stated by Dr. Self.

E. The Commissioner having examined the entire record finds that the record discloses a substantial and obvious community need for the proposed branch office; that the proposed branch office will be able to obtain the business necessary to be profitable within a reasonable period of time; that the existing Savings and Loan Associations doing business in the community will not be unduly harmed and can continue to operate successfully and serve the public.

F. The Commissioner further sets out the additional facts generally as being underlying and supportive facts of the conclusions reached herein:

1. That Weatherford is the county seat of Parker County, Texas and that the particular topography of this area demonstrates a substantial highway network which was shown by aerial photographs showing Weatherford to be in the approximate center of the County and intersected by Interstate 20 (H.R. 153, 154, Br.Ex. 8, 9).

Dr. Self testified that the sources relied upon by him in his testimony were reliable sources and that other persons of his profession relied upon these sources. He testified that Parker County, approximately 30 miles square (H.R. 154), would be a community that could be served by a branch office of Stephenville Savings and Loan Association in Parker County, Texas (H.R. 151). That Weatherford is approximately a one hour's drive form Dallas-Fort Worth Regional Airport. Aerial photographs taken by Dr. Self over the area depicted and showed the highway networks and the developments going on in the surrounding communities and subdivisions of Springtown, Willow Creek, Aledo, Jaw Creek, Trail Lake Estates and Highland Park (Br.Ex. 9–19) (H.R. 158–164 & 173–181).

He testified that a new shopping center was under construction in the general location of where the proposed branch was to be located on South Main Street (H.R. 168). His exhibits showed the Weatherford Industrial Park and he testified that his examination showed the beginnings of a substantial industrial activity in the city that previously had been dependent upon commercial trade generated by the agriculture in the area (H.R. 172).

He further gave the general background of the smaller communities in the area that were developing; specifically new subdivisions in Aledo (H.R. 179) and a new high school.

Dr. Self further referred to one of the considerations determining the economic base as being the population and gave a general statement of population matters in Parker County and traced through census documents. He stated that the economic base originally dependent upon agriculture was changing with the growing industrial and commercial activities in nearby Tarrant County and the begin-

are set out in the footnote for a better understanding of appellant's points of error and not as a model of draftsmanship.

ning of more intensive commercial and industrial activities within Parker County (H.R. 188). He testified that the total county population had increased from 22,880 in 1960 to 33,888 in 1970, an increase of almost exactly 11,000, or a 48% increase within Parker County (H.R. 188).

He further testified that the City of Weatherford had increased 20% and that this was a healthy increase for the same period of time (H.R. 189). Dr. Self also testified that the rural population appeared to be increasing and that in his opinion the population would continue to grow as he saw no significant deterrents to the continuing growth of the population (H.R. 190). He gave as additional support for his opinion that he had observed what was occurring in near counties such as Tarrant and Dallas and that the proximity to a metroplex center would be a powerful influence on the continued growth of the community. Further, that the local basic industry and commercial activity and service activities growth supported by the adequate highway transportation network, supported his opinion (H.R. 190).

Dr. Self also testified that he had made an examination of the growth of savings within the institutions that are located in Weatherford to determine whether or not there was an adequate flow of money into savings that would support an additional Savings and Loan facility. He further testified that he examined the mortgage loan market through statistical computation of the Deed of Trust Records of Parker County, Texas to determine what had happened in regards to mortgage lending within the county (H.R. 192, Br.Ex. 21).

He also stated that he observed what was happening in Parker County to assessed tax valuation (H.R. 193, 196) and that assessed valuation had increased more than $10,000,000 between 1974 and 1976, from about $51,000,-000 in 1974 to about $62,000,000 in 1976, which reflected a healthy growth of the economy (H.R. 196). He demonstrated that school enrollment in the Weatherford Independent School District had increased from 1974 to 1976 significantly (H.R. 197).

He further testified that in examining the growth of savings and mortgage loans in the proposed area that is shown by the Deed of Trust Records that he examined amounts loaned by Mutual Building and Loan Association, First Savings of Bowie Branch in Parker County and the three local banks, Citizens National Bank, First National Bank, and the Farmers and Merchants State Bank, as well as other bank institutions outside the County. (H.R. 241).

He stated that his analysis lead to the conclusions that there is a growing market for mort-

Appellant claims the Commissioner's findings violate Art. 852a, § 11.11(4) in several respects: (1) the findings are, in part, gage lending in Parker County in that other Savings and Loan Associations have substantially increased their activity showing an increase of about 1.5 million in 1975 to 3.9 million in 1976. The local banks substantially increased their participation in the market, with their increases being from about 4.7 million to 7.6 million between 1975 and 1976 and with non local banks increasing their participation from 7.9 million to 8.6 million. He stated that there was an increasing activity by most of the lending agencies in the mortgage lending market in Parker County and that it indicated to him that with the growing market that a new branch Savings and Loan facility would be economically feasible (H.R. 242, 243, Br.Ex. 21). He further noted the acceleration in the market of Mutual Building and Loan of Weatherford (H.R. 244–245; Br.Ex. 23).

As to savings, Dr. Self testified the banks in Weatherford increased their time and savings deposits by about 11.7 million from the period ending 1973 to year ending 1975, an increase from 40.7 million to 52.4 million. This increase continued into 1976 (H.R. 247). He summarized his findings by showing that the time and savings of Mutual Building and Loan and the Parker County Banks increased 15.6 million or 24% in the two year period, stating that this was a substantial increase and demonstrates the economic activity. (H.R. 248).

### III.
### CONCLUSIONS OF LAW

Having considered the application of Stephenville Savings and Loan Association for a branch office in Weatherford, Parker County, Texas; the data furnished with the application; the evidence adduced at the hearing and his official records, the Commissioner affirmatively finds that the statutory and regulatory requirements relating to the application for, and the approval of, the establishing of a branch office of a Savings and Loan Association in the State of Texas have been substantially proved and established and that approval of the application of Stephenville Savings and Loan Association for a branch office to be located at 100 College Park Drive, Weatherford, Parker County, Texas should be granted and such permission is hereby GRANTED and the application is hereby in all things APPROVED.

SIGNED and ENTERED in the Office of the Savings and Loan Department of Texas, Austin, Travis County, Texas on this 24th day of January A.D. 1977.

/s/ W. Sale Lewis
W. SALE LEWIS
Savings and Loan Commissioner
of Texas"

summaries of testimony instead of findings of "fact"; (2) some of the findings consist of the opinions of expert witnesses rather than "specific facts" to which they testified; (3) there are no findings with respect to the number of savings and loan facilities in the community or the level of existing services offered by those facilities or the competition among them; and (4) the findings are "so vague, hazy and conclusionary" as to fail to apprise the court and others of the Commissioner's specific findings of fact.

■ If the Commissioner's ultimate findings are stated in statutory language, Art. 852a, § 11.11(4) requires a *concise* and *explicit* statement of the underlying facts (proof) supporting them. Facts or proof in an administrative proceeding, as in a conventional trial, usually consist of testimony or documents. Much of appellees' proof consisted of testimony of three witnesses, Stanley Allen Self, H. T. Latham, and James Ramsay. In deciding the ultimate facts as he did, the Commissioner necessarily relied upon much of their testimony. Article 852a, § 11.11(4) required the Commissioner to set out germane portions of the proof supporting the ultimate findings. The fact that the Commissioner identified the witnesses who produced the proof does not somehow make that proof less an underlying fact supportive of an ultimate finding.

■ The Commissioner's statement of underlying proof refers to opinion testimony by appellees' economic expert. The Commissioner was entitled to rely upon opinion evidence in the preparation of the order, at least in the absence of objection. *Gonzales County Savings and Loan Association v. Lewis*, 486 S.W.2d 176 (Tex.Civ.App. 1972, writ ref'd n. r. e.). In that connection, appellant has preserved no complaint on appeal as to the admission of the opinion evidence.

■ Appellant's third complaint of the judgment is that the Commissioner's findings do not mention the number of savings and loan facilities in the community or the level of existing service offered by those facilities or the competition prevailing among them. We agree with appellees' argument that Art. 852a § 11.11(4) does not require that the Commissioner comment upon every aspect of the record that may be relevant. In a given contest, there may be scores of factors that support or at least influence the judgment of the Commissioner. The omission of two or three factors should not be basis for reversal in face of the fact that the order contains numerous references to other significant factors that do sufficiently support the ultimate facts reached by the Commissioner.

■ "The mere presence of a generalization in the order does not render it invalid. Basic facts by their very nature are often in the form of 'generalizations' or 'conclusions.'" *Citizens of Texas Savings and Loan Association v. Lewis*, 483 S.W.2d 359, 363 (Tex.Civ.App.1972, writ ref'd n. r. e.). Although the Commissioner's statement of underlying facts may be "vague, hazy and conclusionary," the path which the Commissioner followed can be discerned. *Citizens of Texas Savings and Loan Association v. Lewis, supra.*

The remaining two points of error are that the district court erred in entering judgment sustaining the order of the Commissioner for the reason that the order was not supported by substantial evidence. More specifically, appellant charges in point of error two that the order and findings of the Commissioner on the ultimate issues of public need, profitable operation, and absence of undue harm to other associations are not reasonably supported by substantial evidence. Point of error three is that the judgment is erroneous in that the finding of the Commissioner that appellee, Stephenville Savings and Loan Association, had a profitable operation for a three-year period next preceding the filing of its branch office application is not reasonably supported by substantial evidence.

■ An appeal from an order of the Savings and Loan Commissioner is governed by the substantial evidence rule. Because the Commissioner's order is presumed to be supported by substantial evidence, it

was appellant's burden to overcome that presumption. *City of San Antonio v. Texas Water Commission*, 407 S.W.2d 752 (Tex. 1966). To set aside the Commissioner's order, it was appellant's burden to demonstrate that the evidence, as a whole, was such that reasonable minds could not have concluded to grant the branch application. *Trapp v. Shell Oil Co.*, 198 S.W.2d 424 (Tex. 1946). Substantial evidence need not be much evidence, and although "substantial" means more than a mere scintilla, or some evidence, it is less than is required to sustain a verdict being attacked as against the great weight and preponderance of the evidence. Reavley, *Substantial Evidence and Insubstantial Review in Texas*, 23 Sw.L.J. 239 (1969). If there existed substantial evidence which would have supported either the grant or denial of the application, the Commissioner's order is entitled to full effect. *Texas Aeronautics Commission v. Braniff Airways, Inc.*, 454 S.W.2d 199 (Tex. 1970).

Before the judgment of the district court may be reversed, we must hold that the order of the Commissioner is not supported by substantial evidence and that the evidence so conclusively required a negative finding with respect to public need or profitable operation or absence of undue harm or profitable operation for a three-year period that the Commissioner's refusal to make a negative finding of one or more of those ultimate facts was arbitrary or capricious. *Gerst v. Cain*, 388 S.W.2d 168 (Tex.1965). To the contrary, we are of the opinion that there existed substantial evidence at the time of the entry of the Commissioner's order that would have supported the granting of the branch application. The posture of the record being such, it follows that the order of the Commissioner granting the application for branch office should be given effect and that the judgment of the district court should be affirmed. *Texas Aeronautics Commission v. Braniff Airways, Inc., supra.*

In the order granting the branch application, the Commissioner set out the underlying facts supporting the ultimate findings on public need, profitable operation, ab-

sence of undue harm, and profitable operation by Stephenville Savings and Loan Association for a three-year period next preceding the filing of the application. The underlying facts have been set out in the footnote, and no good purpose would be served by again summarizing those facts. We are satisfied that there existed substantial evidence which supported the Commissioner's order.

Appellant points out two occurrences in the late 1960's and early 1970's that argue against the Commissioner's finding on public need: (1) The Department of Defense closed Fort Wolters, a military base located in Parker and Palo Pinto Counties and (2) General Dynamics reduced its employment force. These occurrences resulted in a population decrease of nearly one thousand persons in Parker County between 1970 and 1974 and a decrease in the total earnings in Parker County for the same period of time.

We agree that appellant's argument pertaining to Fort Wolters and General Dynamics is of significance concerning public need, but "[w]here there is substantial evidence which would support either affirmative or negative findings, the order must stand, notwithstanding the Commissioner may have struck a balance with which the court might differ." *Gerst v. Goldsbury*, 434 S.W.2d 665, 667 (Tex.1968).

The judgment is affirmed.