BROWNING–FERRIS, INC., Appellant,

v.

TEXAS DEPARTMENT OF HEALTH, Appellee.

No. 13370.

Court of Appeals of Texas, Austin.

Nov. 25, 1981.

Rehearing Denied Dec. 23, 1981.

Lee C. Clyburn, Fulbright & Jaworski, Austin, for appellant.

Mark White, Atty. Gen., Brian E. Berwick, Asst. Atty. Gen., Austin, for appellee.

SHANNON, Justice.

Appellant Browning-Ferris, Inc., filed an administrative appeal from the order of appellee Texas Department of Health in the district court of Travis County. The Department's order denied appellant's application for a solid waste disposal permit that would have authorized construction of a Type I Municipal Solid Waste Landfill project in southwest Houston. Southern Petroleum Laboratories, Inc., and Hiram-

Clarke Civic Club, Inc., filed pleas in intervention in the administrative appeal. After hearing, the district court rendered judgment sustaining the Department's order. This Court will affirm the judgment of the district court.

Appellant filed its application with the Department in May, 1978, requesting a permit to operate the disposal site. The site was to consist of a landfill type operation on a 293 acre tract where appellant would dispose of approximately 4,000 tons of municipal solid waste daily.

After a hearing in Houston, the Department entered its order denying the application for the reason that "... the operation of a Type I municipal solid waste disposal site would constitute improper land use of the property [the 293 acre tract]." The authority for the Department to reject the application upon the basis of "improper land use" is found in the Municipal Solid Waste Management Regulations adopted by the Department in April, 1977.[1]

Appellant claims, initially, that the Department's regulations concerning land use for solid waste disposal facilities are unconstitutionally vague in that such regulations furnish no adequate guidelines or standards for the denial or granting of a permit.

A regulation violates due process if it requires the doing of an act so vague that persons of common intelligence must guess at its meaning and differ as to its application. *Lone Star Gas Co. v. Kelly,* 140 Tex. 15, 165 S.W.2d 446 (1942); *Texas Liquor Control Board v. Attic Club, Inc.,* 457 S.W.2d 41 (Tex.1970); *Lloyd A. Fry Roofing Co. v. State,* 541 S.W.2d 639 (Tex.Civ. App.1976, writ ref'd n. r. e.).

The Department's municipal solid waste management regulations are contained in a sixty-seven page pamphlet. While the reg-

---

1. The Department's adoption of those regulations was in response to Tex.Rev.Civ.Stat.Ann. art. 4477–7 § 4(c) (Vernon Supp.1980) that provides:

   "(c) Each state agency may adopt and promulgate rules and regulations consistent with the general intent and purposes of this Act, and establish minimum standards of operation for all aspects of the management and control of the solid waste over which it has jurisdiction under this Act, including but not limited to collection, handling, storage, processing, and disposal."

ulations contain elaborate requirements for the content of an application for a solid waste disposal permit, there are few regulations devoted to systematic criteria to direct the Department in its decision to grant or deny the application. The following regulations set out considerations which guide the Department in its decision-making process.

(1) Section A–5 of the regulations captioned "Department's Policy on Land Use," quotes a policy statement by the Texas Board of Health Resources that:

The impact of a solid waste facility upon a city, community, group of property owners, or individuals shall be considered in terms of land use, area-wide plans, community goals, and other factors associated with the public interest. Regulations shall be prepared incorporating statements which will guide applicants for solid waste permits toward the selection of sites remote from public concern and encourage innovative management procedures such as recycling, land improvement, and the generation of energy. *Further, the attention of the applicants shall be directed to the absolute necessity for the land use compatibility of solid waste facilities with other land uses within the impact area of ~~the~~ a proposed site.* (emphasis added)

(2) Section E–1.1, quotes Tex.Rev.Civ. Stat.Ann. art. 4477–7, Sec. 4(e)(8) stating that the Department has authority to " . . . revoke or amend any permit it issues for reasons pertaining to public health, air or water pollution, *land use*, . . . ." (emphasis added)

(3) Section E–3.3e provides in fact that "criteria to be considered in the selection of a site and design of a facility should provide for safeguarding the health, welfare and physical property of the people through consideration of geology, soil conditions, drainage, *land use*, zoning, adequacy of access roads and highways, economic haul distances, and other considerations as the specific site dictates." (emphasis added)

(4) Section E–3.3e(1) entitled "Land Use," restates a part of Section A–5 quoted above, and provides:

The impact of a solid waste facility upon a city, community, group of property owners and individuals shall be considered in terms of *land use*, area-wide plans, community goals, and other factors associated with the public interest. Normally, a land disposal site should be located at a place as remote from residences as possible with consideration to reclaiming waste lands. (emphasis added)

Following this statement are six further requirements ostensibly relating to "land use," four of which state specific data to be included in a permit application (paragraphs (a), (b), (c), and (d)), and two that are specifications for the design of the proposed site (paragraphs (e) and (f)).[2]

---

2. The six requirements are as follows:

(a) When a local municipal or county government having jurisdiction has approved the location of a site, through a procedure involving a public hearing, documentation of that approval action shall be submitted with the permit application.

(b) When a local municipal or county government having jurisdiction has not taken any action concerning the location of the site, the following data shall be submitted with the permit application to assist the Department in evaluating the impact of the site on the surrounding area:

1. The growth trends of the community with directions of major development.

2. The character of land uses and zoning within one mile of the disposal site including the nature of any commercial activities.

(c) Plans shall be submitted, when appropriate, for the maintenance of natural wind-

breaks, such as green belts, where they will improve the appearance and operation of the site.

(d) Plans shall be submitted, when appropriate, for screening the site from public view.

(e) Sites should not be located in areas where the attraction of birds is deemed to be significant hazard to low-flying aircraft. Guidelines regarding location of landfills near airports can be found in Federal Aviation Administration Order 5200.5. As a general rule, land disposal sites should not be located closer than 10,000 feet to any runway used or planned to be used by turbojet aircraft or closer than 5,000 feet to any runway used only by piston-engine aircraft and not located in such a position so as to place a runway or approach/departure paths between the landfill and bird feeding, watering or roosting areas. However, under certain circumstances, landfills beyond 10,000 feet may also pose

The regulations do not define "land use" or "improper land use." The only specific statement concerning a land use policy to guide permit determinations is the comment in Section A–5 that is italicized above—that a solid waste facility must be compatible with land uses in the "impact area." Since this part of the regulations was the basis for the agency's decision to deny the application, it must withstand the appellant's "void for vagueness" challenge.

Within recent years the courts of this state have sustained a number of statutes challenged as being void for vagueness. The Supreme Court held sufficiently definite a section of the Insurance Code which permitted the State Insurance Board to deny or revoke an insurance carrier a certificate of authority to conduct business if the Board found the carrier "not worthy of the public confidence." The Court commented that the term was reasonably clear and as specific as the public interest demanded. *Jordan v. State Board of Insurance*, 160 Tex. 506, 334 S.W.2d 278 (1960).

Statutes authorizing the Alcoholic Beverage Commission to deny a license to a vendor of liquor if "based on the general welfare, health, peace, morals, and safety of the people, and on the public sense of decency, a refusal is warranted" were held sufficiently specific in *Morgan v. Texas Alcoholic Beverage Comm.*, 519 S.W.2d 250 (Tex.Civ.App.1975, no writ); *Thacker v. Texas Alcoholic Beverage Comm.*, 474 S.W.2d 258 (Tex.Civ.App.1971, no writ).

A statute which authorized the Texas Board of Medical Examiners to revoke a physician's license if it found the doctor guilty of "grossly unprofessional conduct, or [sic] a character which in the opinion of the Board is likely to deceive or defraud the public" withstood a vagueness challenge in *Martinez v. Texas State Board of Medical Examiners*, 476 S.W.2d 400 (Tex.Civ.App. 1972, writ ref'd n. r. e.) *appeal dismissed*, 409 U.S. 1020, 93 S.Ct. 463, 34 L.Ed.2d 312 (1972).

Statutes and regulations concerning environmental control have been challenged also as lacking adequate standards and guidelines. The Texas Clean Air Act defines "air pollution" as "the presence in the atmosphere of one or more air contaminants or combinations thereof, in such concentration and of such duration as are or may tend to be injurious to or to adversely affect human health or welfare, animal life, vegetation or property, as to interfere with the normal use and enjoyment of animal life, vegetation or property." This definition was held not impermissibly vague in *Texas Pet Foods, Inc. v. State*, 529 S.W.2d 820 (Tex.Civ.App.1975, writ ref'd n. r. e.); and *Houston Compressed Steel Corp. v. State*, 456 S.W.2d 768 (Tex.Civ.App.1970, no writ).

On the other hand, the Supreme Court has stricken recently a part of the Antiquities Code for unconstitutional vagueness. In *Texas Antiquities Committee v. Dallas County Community College District*, 554 S.W.2d 924 (Tex.1977), the Court declared that the part of the Antiquities Code, which provided that buildings of "historical interest" could not be destroyed without a permit from the Antiquities Committee, did not provide adequate criteria or safeguards for determining when a permit should be granted. The Court noted that although authorized by statute to do so, the Antiquities Committee had not adopted any administrative regulations or standards specifying which buildings could be preserved under the banner of "historical interest."

It is presumed that administrative regulations are valid and the burden of demonstrating their invalidity is on the challenging party. *Brown v. Humble Oil & Refining Co.*, 126 Tex. 296, 87 S.W.2d 1069 (1935). Although the term "land use" is broad, we observe that term is hardly more general than those standards sustained in the cases above noticed. As with air pollu-

a safety hazard to an airport. Therefore, all landfill sites within four (4) miles of an airport will be critically evaluated to determine if an incompatibility exists.

(f) A minimum separating distance of 20 feet shall be maintained between the disposal operation and the adjacent property line.

tion control, the science of municipal solid waste control is relatively recent and inexact. The standards regulating municipal solid waste disposal are doubtless difficult to devise, but if such controls are to be effective, they, of necessity, must be broad and somewhat flexible. If controls are too precise, they will provide easy escape for those who wish to circumvent the law. *Houston Compressed Steel Corp. v. State,* *supra.*

Admittedly, the Department's regulations do not define "land use" or "improper land use." Nevertheless, the regulations identify a range of considerations that may be involved in determining whether or not a particular location is appropriate. For example, Sec. A–5 places the applicant on notice that a solid waste facility must be compatible with land uses in the impact area. Accordingly, we overrule appellant's "void for vagueness" challenge.

■ Appellant claims by further point of error that the Department's denial order is not supported by substantial evidence. An appeal from an order of the Texas Department of Health is governed by the substantial evidence rule. Because the agency order is presumed to be supported by substantial evidence, it was appellant's burden to overcome that presumption. *City of San Antonio v. Texas Water Commission,* 407 S.W.2d 752 (Tex.1966). The burden upon one seeking to set aside an agency order is not impossible, although it certainly is not easy. *Board of Regents v. Martine,* 607 S.W.2d 638 (Tex.Civ.App.1980, writ ref'd n. r. e.). Substantial evidence need not be much evidence, and although "substantial" means more than a mere scintilla, or some evidence, it is less than is required to sustain a verdict being attacked as against the great weight and preponderance of the evidence. *Mutual Bldg. and Loan Ass'n v. Lewis,* 572 S.W.2d 771 (Tex.Civ.App.1978, no writ); Reavley, *Substantial Evidence and Insubstantial Review in Texas,* 23 Sw. L.J. 239 (1969). If there existed substantial evidence which would have supported either the grant or denial of the application, the agency order should be sustained. *Texas*

*Aeronautics Commission v. Braniff Airways, Inc.,* 454 S.W.2d 199 (Tex.1970).

■ The hearing record contains more than a thousand pages. The site of the proposed landfill was located adjacent to a landfill presently operated by appellant. Persons residing near the present landfill testified to the overpowering stench from appellant's operation. Others testified that the garbage attracted rats, flies, and stray dogs. Some witnesses described the outbreak of fires at the dump and the presence of loose trash in the neighborhood scattered from the disposal site.

An employee of the regional office of the Department testified that although appellant had not been guilty of a major violation of the Department's regulations, appellant's landfill was not in strict compliance with the regulations and that appellant had been notified of needed improvements. The record further reflects correspondence from the Texas Air Control Board to the effect that the proposed disposal site was a potential source of odors and dust unless further measures were taken to redesign the site. Also in the record is a letter from the Texas Department of Water Resources warning of potential damages to the surface and sub-surface waters near the proposed site unless corrective measures were developed by appellant. Such evidence supported the conclusion that the development would be an incompatible land use relative to the surrounding neighborhood.

Before the judgment of the district court may be reversed, this Court must hold the order of the Department is not supported by substantial evidence and that the evidence so conclusively required an affirmative finding with respect to land use that the Department's refusal to make an affirmative finding was arbitrary and capricious. *Mutual Bldg. and Loan Ass'n v. Lewis,* 572 S.W.2d 771 (Tex.Civ.App.1978, no writ). To the contrary, this Court is of the opinion that there existed substantial evidence at the time of the entry of the Department's order that would have supported the denial of the trash company's application. The posture of the record be-

ing such, it follows that the order of the Department denying the application should be given effect and that the judgment of the district court should be affirmed.

By further points of error appellant claims the district court erred because the record reflects that the Department's denial of the permit was arbitrary and capricious and resulted from political and public opposition to the proposed site. The foundation for appellant's claims is a resolution passed by the Houston City Council opposing further expansion of the existing landfill and admitted into evidence at the administrative hearing. Appellant relies upon *Starr County v. Starr Industrial Services, Inc.*, 584 S.W.2d 352 (Tex.Civ.App.1979, writ ref'd n. r. e.), as authority that "local opposition" is an impermissible basis for refusal of a solid waste disposal permit. Appellant claims that *Starr County* requires reversal of the district court's judgment.

In *Starr County*, Starr Industrial Services, Inc., filed an application with the Texas Water Quality Board requesting approval by the agency of a solid waste permit for a landfill to be located in Starr County. Although the application met all of the requirements of the governing statute, it also generated heated opposition from residents of Starr County. In correspondence, the Board's executive director admitted that the application had met the statutory criteria, but pointed the way for the Board's future course of action by concluding that the application could be denied "on the basis of the express views of the people within the county." The controlling statute did not list local sentiment or opposition as a criteria for approval or denial of an application. At the Board's meeting, a Board member moved that the permit be denied for the reason that:

"I likewise am reluctant to imply that we have veto power over the local government and I must conclude, all the arguments possibly to the contrary, that there is considerable local opposition on the part of the local governments, more than just one, and I'm inclined to agree with [the executive director of the agency]."

That motion carried and the application for permit was denied. In the Board's order denying the application, the Board concluded that the application fully complied with the governing statute, but found that "[t]he adamant local opposition to the application for a proposed industrial solid waste management site evidences that the granting of a permit would be contrary to the welfare of the people in the area."

On appeal, this Court held that since local opposition was not a statutory criteria to be used by the Board, it should play no part in the Board's decision-making process, but that it had done so.

Unlike the Texas Water Quality Board in *Starr County*, the Department of Health by regulation § E–4.1c specifically authorizes consideration of any recommendation or action taken by the governing body of a city or county within whose jurisdiction the proposed site is to be located concerning, among other things, "proper land use." Accordingly, the holding in *Starr County* is inapposite to our holding in this appeal.

The judgment is affirmed.