

OFFICE *of the* ATTORNEY GENERAL

GREG ABBOTT

January 6, 2003

The Honorable Robert Junell
Chair, House Committee on Appropriations
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0008

Re: Authority of the Texas Commission on Private Security to regulate funeral escort services (RQ-0573-JC)

Dear Representative Junell:

You ask whether the Texas Commission on Private Security has authority under chapter 1702 of the Occupations Code to adopt rules regulating a uniformed motorcycle escort service and to apply them to a private funeral escort service. To the extent that a uniformed motorcycle escort service performs only traffic control functions in connection with escorting a funeral procession or other motorcade, it is not subject to regulation by the Texas Commission on Private Security.

Pursuant to the Private Security Act (the "Act"), TEX. OCC. CODE ANN. ch. 1702 (Vernon 2003), the Texas Commission on Private Security (the "Commission") licenses and regulates investigations companies and security services contractors. *See id.* §§ 1702.004, .101; *see also id.* §§ 1702.102 (activities of security services contractors), .104 (activities of an investigations company). The Commission "shall adopt rules and general policies" to guide the agency in administering chapter 1702 of the Occupations Code and it is authorized to "adopt rules necessary to implement" that chapter. *Id.* § 1702.061(b), (d)(3). You ask whether rules that the Commission has adopted to regulate a uniformed motorcycle escort service are authorized by the Act. *See* 27 Tex. Reg. 561 (2002), *adopted* 27 Tex. Reg. 3357 (2002) (to be codified at 22 TEX. ADMIN. CODE ch. 428) (Tex. Comm'n on Private Security).

We summarize the standards for determining the validity of administrative rules. The legislature may delegate to administrative agencies the authority to promulgate rules reasonably necessary to carry out the expressed purpose of a statute. *See R.R. Comm'n of Tex. v. Lone Star Gas Co.*, 844 S.W.2d 679 (Tex. 1992). The courts presume that administrative regulations are valid and the burden of demonstrating their invalidity is on the challenging party. *See Brown v. Humble Oil & Refining Co.*, 87 S.W.2d 1069 (Tex. 1935); *Browning-Ferris, Inc. v. Tex. Dep't of Health*, 625 S.W.2d 764, 767 (Tex. App.–Austin 1981, writ ref'd. n.r.e.). *See also Bullock v. Hewlett-Packard Co.*, 628 S.W.2d 754, 756 (Tex. 1982) (courts must uphold legislative administrative rules if they are reasonable). An administrative agency may, however, adopt only rules that are authorized by and consistent with its statutory authority. *See R.R. Comm'n*, 844 S.W.2d at 685; *State Bd. of Ins. v. Deffebach*, 631 S.W.2d 794, 798 (Tex. App.–Austin 1982, writ ref'd n.r.e.). Administrative rules

may not impose additional burdens, conditions, or restrictions in excess of the statutory provisions. *Hollywood Calling v. Pub. Util. Comm'n of Tex.*, 805 S.W.2d 618, 620 (Tex. App.–Austin 1991, no writ). The determining factor as to whether an agency exceeded its statutory authority is whether the rule is in harmony with the general objectives of the statute. *Gerst v. Oak Cliff Savings & Loan Ass'n*, 432 S.W.2d 702, 706 (Tex. 1968).

We turn to the rules titled "Uniformed Motorcycle Escort Service." They provide in part:

> All guard companies . . . [as defined by chapter 1702 of the Occupations Code[1]] shall register any employee who wears a uniform commonly associated with private security or law enforcement prior to assigning employee to any uniformed escort duty.

27 Tex. Reg. 561 (2002), *adopted* 27 Tex. Reg. 3357 (2002) (to be codified at 22 TEX. ADMIN. CODE § 428.1) (Tex. Comm'n on Private Security). Rule 428.2 provides that the Commission shall approve "[t]he uniform, badge and shoulder patch worn by an escort service" and that "[n]o uniform, badge or shoulder patch other than those approved by the Commission shall be worn." *Id.* Rule 428.7 exempts peace officers, providing as follows:

> Nothing in the rule shall be construed to prohibit regularly employed officers of the State or any political subdivision of the State from furnishing uniformed motorcycle escort services when assigned by their respective departments or when providing a service in compliance with § 1702.322 [providing exemption from chapter 1702 for law enforcement personnel under specific circumstances].

*Id. at* 562 (to be codified at 22 TEX. ADMIN. CODE § 428.7). Other rules address insurance, the requirement that uniformed employees hold a motorcycle operator's license, *see* TEX. TRANSP. CODE ANN. § 521.084 (Vernon 1999), the requirement that uniformed motorcycle escorts comply with state law restricting the operation of a motor vehicle equipped with certain kinds of lights, *see id.* § 547.305(c) (Vernon Supp. 2003), and disqualification from employment with a motorcycle escort service of persons who have been convicted of driving while intoxicated during the last five years. *See* 27 Tex. Reg. 561-62 (2002), *adopted* 27 Tex. Reg. 3357 (2002) (to be codified at 22 TEX. ADMIN. CODE §§ 428.3-.6) (Tex. Comm'n on Private Security). None of the rules indicate that the uniformed employees are to be armed. Thus, they are not subject to any provisions applicable to armed security officers. *See* TEX. OCC. CODE ANN. §§ 1702.107 (Vernon 2003) (person acts as a courier company if person transports certain items under armed guard); .161 (security officer who carries a firearm in course of duties must hold a security officer commission issued by the Commission on Private Security).

---

[1]Rule 428.1 refers to "guard companies, as defined by Title 10, Chapter 1702 Subchapter G § 1702.161, Texas Occupations Code." 27 Tex. Reg. 561 (2002), *adopted* 27 Tex. Reg. 3357 (2002) (to be codified at 22 TEX. ADMIN. CODE § 428.1) (Tex. Comm'n on Private Security). Section 1702.161 of the Occupations Code actually relates to armed security officers and the requirement that they hold a security officer commission issued by the Commission on Private Security. *See* TEX. OCC. CODE ANN. § 1702.161 (Vernon 2003). "Guard company" is defined in section 1702.108 of the Occupations Code. *See id.* § 1702.108.

We consider whether the above rules are within the Commission's authority to adopt rules "necessary to implement" chapter 1702 of the Occupations Code and whether they otherwise comply with the standards for determining the validity of administrative rules. The Act expressly authorizes the Commission to regulate alarm systems companies, armored car companies, courier companies, guard companies, guard dog companies, security officers, and personal protection officers. *See* TEX. OCC. CODE ANN. §§ 1702.102, .104-.109, .161, .201 (Vernon 2003). *See also id.* §§ 1702.321-.323 (government employees while performing official duties and peace officers under the various circumstances set out in the statute are excepted from the provisions of chapter 1702). Nothing in the Act expressly authorizes the Commission to regulate uniformed motorcycle escort services or even expressly refers to such services.

Section 428.1 requires "guard companies" to register an employee who wears a uniform commonly associated with private security or law enforcement prior to assigning that employee to uniformed escort duty. The Commission apparently based these rules on its authority to regulate "guard companies" pursuant to section 1702.108 of the Occupations Code. Accordingly, we must determine whether the Commission's statutory authority to regulate guard companies includes authority to regulate persons who provide uniformed motorcycle escort services, that is, whether the services performed by a uniformed motorcycle escort are within the services of a "guard company" as described by section 1702.108.

A determination about the functions performed by a uniformed motorcycle escort service and a private funeral escort service will involve the investigation and resolution of questions of fact, which cannot be resolved in the opinion process. *See* Tex. Att'y Gen. Op. Nos. JC-0328 (2000) at 6, JC-0020 (1999) at 2, O-2911 (1940) at 2. We will therefore rely on the characterization of these services in judicial decisions and legislation. *See* Tex. Att'y Gen. Op. Nos. DM-236 (1993) at 2, JM-1216 (1990) at 2.

The functions of an escort service, particularly in connection with escorting funerals, are addressed in *Blackwell v. Harris County*, 909 S.W.2d 135, 139 (Tex. App.–Houston [14th Dist.] 1995, writ denied). In *Blackwell*, the court determined that a deputy sheriff was acting within the course and scope of his employment when escorting a funeral procession. The court explained the deputy's participation as follows:

> State law requires strict adherence to traffic control signals unless otherwise directed by a police officer. . . . To maintain the cohesive integrity of a motorcade in an urban environment, its members must often proceed in opposition to traffic control devices. This is not possible without a police escort.

*Blackwell*, 909 S.W.2d at 138 (citations omitted). It further noted that the City of Houston required all funeral processions to be accompanied by peace officers for the purpose of directing traffic. *See id.* at 140; HOUSTON, TEX., CODE OF ORDINANCES ch. 45, art. IX, § 45-253 (2002) (each funeral procession shall be accompanied by a police motorcycle escort), *available at* http://www.ci.houston.tx.us/codes/chapters41to45.htm (last visited Dec. 19, 2002). *See also Brown v. Vigeon*, 367 S.W.2d 727 (Tex. Civ. App.–Beaumont 1963, writ ref'd n.r.e.) (driver in funeral

procession who entered intersection against red light without benefit of direction by police officer did not have right-of-way). Thus, the purpose of the funeral escort in *Blackwell* was traffic control, with the purpose of keeping the motorcade together.

Although peace officers provide traffic control for funeral processions in Houston, some Texas cities allow funeral processions to be accompanied by private motor vehicle escorts for traffic control purposes. *See generally City of Amarillo v. Griggs Southwest Mortuary, Inc.*, 406 S.W.2d 230, 232 (Tex. Civ. App.–Amarillo 1966, writ ref'd n.r.e.) (home rule city may enact ordinance regulating vehicles using public streets). An ordinance of the City of San Angelo provides that a funeral director may not allow a funeral procession to disregard traffic control signals upon the public streets "unless said procession is escorted by the police or by a licensed escort service." SAN ANGELO, TEX., CODE OF ORDINANCES ch. 10, art. 10.1300, § 10.1301 (2002), *available at* http://www.sanangelotexas.org/ (last visited Dec. 19, 2002).[2] Under this ordinance, a licensed escort service performs a traffic control function.

The City of Dallas does not require persons conducting funerals to employ a private motor vehicle escort service to guide or escort a funeral procession in the city, but the funeral procession must be identified by displaying a pennant on the lead vehicle and the hearse and all other vehicles must have their headlamps turned on. DALLAS, TEX., THE DALLAS CITY CODE ch. 28, art. XV, § 28-37, 28-181 (2002), *available at* http://dallascityhall.com/dallas/eng/html/codes.html (last visited Dec. 19, 2002). The purpose of such requirements is to make the funeral procession clearly visible to other motorists, to enable it to move safely through city traffic. *See Butcher v. Churchill*, 159 N.E.2d 620 (Ohio Ct. App. 1958) (statute requiring each vehicle in funeral procession to display pennant); *Union Park Mem'l Chapel v. Hutt*, 670 So.2d 64 (Fla. 1996) (funeral director who organized and led funeral procession owed duty of reasonable care to participants). The use of a motorcycle escort may also help identify the funeral procession to other motorists, which would assist the motorcade to stay together and help protect the safety of persons participating in the motorcade and those using the same streets.

*Blackwell* states that a motor vehicle escort provides traffic control for a funeral procession, and the city ordinances we have cited also show that the purpose of a motor vehicle escort is to aid a procession of cars to travel safely through traffic. *See Blackwell*, 909 S.W.2d at 138; *see also* Ronald Schmidt, Annotation, *Liability for Injury or Damages Resulting from Operation of Vehicle in Funeral Procession or in Procession Which is Claimed to Have Such Legal Status*, 52 A.L.R.5th 155 (1997) (discussing cases about liability for injury or damages resulting from operation of vehicle in funeral procession). Our discussion of the Commission's authority to regulate uniformed motorcycle escort services is premised on the idea that such services perform traffic control functions or serve to identify a motorcade to other motorists to assist it in safely traveling on the public streets. Different facts relating to a particular service might require a different analysis. With these caveats in mind, we look at the functions of a "guard company" to determine whether these encompass the traffic control and traffic safety functions performed by a motorcycle escort.

---

[2] We look at home rule city ordinances solely for information about the nature of motor vehicle escort services, without considering any legal issues that they might raise.

Section 1702.004 defines the Commission's regulatory authority. In addition to performing duties required by other law or exercising powers granted by other law, the Commission licenses investigations companies and security services contractors. *See* TEX. OCC. CODE ANN. § 1702.004 (Vernon 2003). *See also id.* §§ 1702.102 (security services contractor license required to act as alarm systems company, armored car company, courier company, guard company, or guard dog company); .104 (investigations company engages in the business of obtaining or furnishing certain kinds of information for purposes stated in the statute; acts as or provides bodyguard). The Commission also issues commissions to security officers who carry firearms in their employment and issues authorizations to certain security officers engaged in the personal protection of individuals. *See id.* §§ 1702.004, .161. It registers "certain individuals connected with a license holder," and "certain individuals employed in a field connected to private investigation or private security," and regulates license holders, security officers, and registrants under chapter 1702. *Id.* § 1702.004(4)-(5). To act as a guard company, a person must be licensed as a security services contractor. *Id.* § 1702.102(a). A "person" includes "an individual, firm, association, company, partnership, corporation, nonprofit organization, institution, or similar entity." *See id.* § 1702.002(16).

Section 1702.108 describes a guard company for the purposes of chapter 1702:

> A person acts as a guard company . . . if the person employs an individual described by Section 1702.323(d) or engages in the business of or undertakes to provide a private watchman, guard, or street patrol service on a contractual basis for another person to:
>
> > (1) prevent entry, larceny, vandalism, abuse, fire, or trespass on private property;
>
> > (2) prevent, observe, or detect unauthorized activity on private property;
>
> > (3) control, regulate, or direct the movement of the public, whether by vehicle or otherwise, only to the extent and for the time directly and specifically required to ensure the protection of property;
>
> > (4) protect an individual from bodily harm including through the use of a personal protection officer; or
>
> > (5) perform a function similar to a function listed in this section.

*Id.* § 1702.108.

There are two branches to the definition of "guard company" in section 1702.108:  (1) a person who employs an individual described by section 1702.323(d), or (2) a person who engages in a kind of business that is further described in subsections (1) through (5).  We address the second branch of the definition first.  None of these subsections describe the traffic control and traffic safety functions of a motor vehicle or motorcycle escort service.  A motor vehicle or motorcycle escort service does not act to "prevent entry, larceny, vandalism, abuse, fire, or trespass on private property; . . . prevent, observe, or detect unauthorized activity on private property; . . .[or] protect an individual from bodily harm including through the use of a personal protection officer."  *Id.* § 1702.108(1)-(2), (4).

Under section 1702.108(3), a vehicle may be used to "control, regulate, or direct the movement of the public . . . *only to the extent and for the time directly and specifically required to ensure the protection of property.*"  *Id.* § 1702.108(3) (emphasis added).  The central idea of this subsection is "the protection of property," a function also carried out by certain other providers of security services.  *See id.* §§ 1702.109(1) (guard dog company), .182 (security department of private business).  The use of a vehicle "to control, regulate, or direct the movement of the public" is narrowly limited "to the extent and for the time directly and specifically required" to protect property.  *Id.* § 1702.108(3).  This function might include patrolling a warehouse or parking garage to protect its contents against theft or damage.  In contrast, the purpose of a motorcycle escort service is to enable a motorcade to stay together, to provide for traffic control where authorized, and to promote the safety of persons traveling on the same streets, not to protect property.

Finally, subsection (5) includes as a guard company a person who performs "a function similar to a function listed in this section."  *Id.* § 1702.108(5).  As we have already seen, the traffic control functions of a uniformed motorcycle escort do not involve protecting private property from trespass, damage, or unauthorized activity, or serving as a bodyguard for a person.  The typical functions of a motorcycle escort are not similar to any of the functions listed in section 1702.108, and therefore are not encompassed in subsection 1702.108(5).  Thus, a motorcycle escort service that performs traffic control functions is not a "guard company" within the second branch of the definition in section 1702.108.

We turn to the first branch of the section 1702.108 definition of "guard company," which states that a person "acts as a guard company . . . if the person employs an individual described by Section 1702.323(d)."  Section 1702.323 of the Occupations Code provides that certain employees are excepted from regulation under chapter 1702 while others, including individuals described by Occupations Code 1702.323(d), are subject to regulation.  Section 1702.323 provides as follows:

> (a) Except as provided by Subsections (b) and (d), this chapter does not apply to an individual employed in an employee-employer relationship exclusively and regularly by one employer in connection with the affairs of the employer.

> (b) [armed security officer must obtain commission].

>             (c) [possession of firearm by private security officer employed by security department of private business].
>
>             (d) This chapter applies to an individual described by Subsection (a) who:
>
>                   (1) works at a location that is open to the public; and
>
>                   (2) in the course of employment:
>
>                         (A) regularly comes into contact with the public; and
>
>                         (B) wears a uniform with any type of badge commonly associated with security personnel or law enforcement or a patch or apparel with "security" or the name of the employer on the patch or apparel.

*Id.* § 1702.323.

Subsections 1702.323(a) and (d), when read together, describe an employee who is subject to the requirements of chapter 1702: an individual "employed in an employee-employer relationship exclusively and regularly by one employer in connection with the affairs of the employer," who "works at a location that is open to the public," regularly comes into contact with the public, and wears a patch or apparel displaying the name of the employer on the patch or apparel. Read in isolation from the rest of chapter 1702, these provisions could apply to a grocery store checker or cafeteria server. However, the legislative intent should be ascertained from the entire act, and not an isolated portion thereof. *Merchants Fast Motor Lines, Inc. v. R.R. Comm'n of Tex.*, 573 S.W.2d 502, 505 (Tex. 1978). When subsections 1702.323(a) and (d) are read together with the general description of the Commission's regulatory authority in section 1702.004, we see that individuals within subsection 1702.323(d) must be employed in a field connected to private investigation or private security, under the conditions stated in subsections 1702.323(a) and (d). *See* TEX. OCC. CODE ANN. §§ 1702.104, .323 (Vernon 2003). Accordingly, a person who employs an individual to serve in a uniformed motorcycle escort to perform traffic control is not, for that reason, a "guard company" within the first branch of the section 1702.108 definition.

The general objectives of chapter 1702 involve the regulation of private investigation services and security services, not traffic control services. Accordingly, the Commission is not authorized to regulate uniformed motor vehicle escorts that perform only traffic control services, and to the extent its rules attempt to do so they are invalid. To the extent that a motorcycle escort service also engages in security functions within the Commission's statutory authority, the Commission does have authority to regulate those activities.

Two of the rules incorporate Transportation Code provisions on the license necessary to operate a motorcycle and the operation of a motor vehicle equipped with certain kinds of lights. *See* TEX. TRANSP. CODE ANN. §§ 521.084 (Vernon 1999), 547.305(c) (Vernon Supp. 2003). A person who operates a motorcycle must comply with these provisions of state law, regardless of whether or not they are incorporated into a rule. In addition, if an employee of a uniformed motorcycle escort service violates a provision of chapter 1702, such as the prohibition against impersonating a security officer, that individual could be sanctioned under the statute. Finally, if the person in charge of a particular funeral procession believes that a security guard as well as a motorcycle escort should accompany it, that person may employ someone holding the appropriate license or registration from the Commission.

## S U M M A R Y

The Texas Commission on Private Security lacks authority under chapter 1702 of the Occupations Code, the Private Security Act, to adopt rules regulating a uniformed motorcycle escort service that performs only traffic control functions and traffic safety functions in connection with escorting a funeral procession or other motorcade. To the extent that a motorcycle escort service also engages in security functions within the Commission's statutory authority, the Commission does have authority to regulate those activities.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee