CONTINENTAL CARS, INC., Appellant,

v.

TEXAS MOTOR VEHICLE
COMMISSION, et al.,
Appellees.

No. 14348.

Court of Appeals of Texas,
Austin.

Aug. 28, 1985.

Rehearing Denied Oct. 2, 1985.

Mary Joe Carroll, Conrad Werkenthin, Clark, Thomas & Winters, Austin, for appellant.

Jim Mattox, Atty. Gen., Honorable J. Scott Wilson, Asst. Atty. Gen., Austin, for Texas Motor Vehicle Com'n.

Richard L. Crozier, Hearne, Knolle, Lewallen, Livingston & Holcomb, Austin, for ADNOH, Inc.

J. Donald McCarthy, Lyon & Lyon, Los Angeles, Cal., Kim E. Brightwell, Vinson & Elkins, Austin, for American Honda Motor Co., Inc.

Before SHANNON, C.J., and BRADY and GAMMAGE, JJ.

SHANNON, Chief Justice.

ADNOH, Inc., d/b/a Doyle Phillips Howdy Honda (Howdy) filed an application with the Texas Motor Vehicle Commission (Commission) to establish a new Honda automobile dealership in South Austin. The Commission granted the application.

Appellant, Continental Cars, Inc., the only Honda dealer in Austin and a protestant before the Commission, filed suit in the district court of Travis County to set aside the order of the Commission. Appellees are Howdy, the Commission, and American Honda Motor Company, Inc., an intervenor in support of Howdy in the agency proceedings and in district court. The district court rendered judgment affirming the Commission's order. This Court will affirm the judgment of the district court.

Texas Rev.Civ.Stat.Ann. art. 4413(36) (1976) created the Texas Motor Vehicle Commission which is charged with the responsibility, among other things, of issuing licenses to dealers upon proper application and proof. The Commission consists of nine persons, and it employs an executive director who serves as the chief administrative officer of the agency.

The agency's hearing officer, who is also the executive director, conducted a public hearing of Howdy's application in March 1983. No member of the Commission heard any part of the evidence, nor did any Commission member read the record of the hearing. In September 1983, the hearing officer's proposal for decision was served on all the parties. The proposal for decision recommended that Howdy's application be denied. The Commission afforded each adversely affected party the opportunity to file exceptions and briefs to the proposal for decision.

On November 22, 1983, the parties presented oral argument to the Commis-

sion. A majority of the Commission voted to grant Howdy's application.

Continental's primary complaint is that the Commission acted in disregard of Tex. Rev.Civ.Stat.Ann. art. 6252–13a, § 15 in that none of its members had read the administrative record before voting to grant or deny Howdy's application. Continental urges the common-sense proposition that he who decides must hear or at least read. That maxim, however, has been substantially altered by § 15 which provides:

[i]f in a contested case a majority of the officials of the agency who are to render the final decision have not heard the case or read the record, the decision, if adverse to a party to the proceeding other than the agency itself, may not be made until a proposal for decision is served on the parties, and an opportunity is afforded to each party adversely affected to file exceptions and present briefs to the officials who are to render the decision. If any party files exceptions or presents briefs, an opportunity must be afforded to all other parties to file replies to the exceptions or briefs. The proposal for decision must contain a statement of the reasons for the proposed decision and of each finding of fact and conclusion of law necessary to the proposed decision, prepared by the person who conducted the hearing or by one who has read the record. The proposal for decision may be amended pursuant to exceptions, replies, or briefs submitted by the parties without again being served on the parties. The parties by written stipulation may waive compliance with this section.

■ If a majority of the members of the agency who are to render the decision have not heard the evidence or read the record, then the hearing examiner's proposal for decision must be served on the parties and an opportunity afforded each party adversely affected to file exceptions and present briefs. In this manner, the adversely affected parties may bring their view of the facts and law before the agency members who have the responsibility for rendering the decision. *Consumers Wa-*

*ter, Inc. v. P.U.C. of Texas,* 651 S.W.2d 335 (Tex.App.1983, writ ref'd n.r.e.). If service of the proposal for decision has been made upon the parties and they have had an opportunity to file exceptions to the proposal for decision and to file briefs, § 15 does not require that the agency members read the record.

Appellees concede, as they must, that none of the nine members of the Commission read the entire record. Nevertheless, it is undisputed that the Commission members read the fifty-seven page summary of the evidence and testimony prepared by the hearing officer and incorporated into his proposal for decision. The proposal for decision was served as required by § 15. Further, all parties filed briefs and exceptions and presented oral argument to the Commission.

Even so, Continental claims that *Citizens Bank of Bryan v. First State Bank, Hearne,* 580 S.W.2d 344 (Tex.1979) mandates in these circumstances that the Commission members read the agency record. The holding in *Citizens* is inapposite to the facts in this appeal. In *Citizens,* unlike here, no proposal for decision was served on the parties and no opportunity was afforded the adversely affected parties to file exceptions and briefs prior to the final decision. Accordingly, under § 15, since a majority of those members of the State Banking Board, voting to grant the charter, had not read the record, it was error for the Board to decide the application without service of the proposal for decision upon the adversely affected parties.

■ Continental next contends that the Commission violated § 15 by "rejecting" the hearing examiner's proposal for decision. Continental points out that § 15 provides only that "the proposal for decision may be *amended* pursuant to exceptions, replies, or briefs submitted by the parties without again being served on the parties" (emphasis added). Continental advances various dictionary meanings for the proposition that the definition of "amend" does not include a "total rejection and substitution of an entirely different instrument."

Contrary to Continental's argument that the final order is a "total rejection" of, and an "entirely different order" from the proposal for decision, an examination reveals that each is very similar to the other. Both writings contain findings of fact which differ only in a few critical areas.

It is evident from a comparison of the findings and conclusions of the proposal for decision and of the final order that the Commission did not file entirely different fact findings, but instead changed the proposal for decision only in critical areas. Black's Law Dictionary, 5th edition, defines "Amend":

> To improve. To change for the better by removing defects or faults. To change, correct, revise.

The Commission in changing, correcting and revising the proposal for decision was not in violation of § 15.

Continental next complains that the Commission's "order was based on outside-the-record hearsay statements." The foundation of the complaint, we are told, is found in two remarks made by counsel for American Honda during oral argument before the Commission. First, counsel referred to a trade publication for the purpose of claiming that the production at the Honda plant in Marysville, Ohio was on schedule. Second, in response to a question by a member of the Commission as to whether, if the application were approved, American Honda would "take care of" Continental Cars, counsel replied that American Honda definitely would.

Continental argues that these comments were related to one of the key issues before the agency, whether American Honda had the ability to adequately supply automobiles to both the new and existing dealers in Austin. Further, the comment was related to a contention that American Honda had discriminated against Continental under its allocation program because Continental had protested Howdy's application.

Continental faces an insurmountable procedural problem in successfully urging its improper argument point. Counsel's argument before the Commission was not recorded. In case of improper argument, a complainant in an administrative proceeding has at least the burden to establish that there was (1) error, (2) which was preserved by objection, and (3) that such error was harmful. Without a record of the oral argument before the agency, the reviewing court, of course, cannot determine error, its preservation, and its effect, if any, on the outcome of the agency order.[1]

Continental's complaints concerning counsel's argument, had such complaints been preserved, are without merit. Any statement regarding discrimination by American Honda against Continental is not germane to any of the three issues the Commission had to decide under the applicable statute authorizing a denial of an application for a new dealer license. Tex. Rev.Civ.Stat.Ann. art. 4413(36), § 4.06(c) (Supp.1985). Accordingly, counsel's out-of-the-record response was of no consequence.

With respect to the adequacy of supply of vehicles by American Honda, one of the major evidentiary facts in the proceeding was that American Honda has constructed a plant in Marysville, Ohio, where production will greatly increase the supply of automobiles to this country. The supply of Hondas had previously been limited by export restrictions on Japanese manufacturers by the Japanese government. These facts were developed at the agency proceeding. It is, of course, presumed that an agency order is valid and the burden of proving otherwise is on the party challenging the order. *City of San Antonio v. Texas Water Commission*, 407 S.W.2d 752 (Tex.1966). Continental made no showing

---

1. Sometime after oral argument, counsel for Continental took the deposition of the hearing officer who was present at oral argument. By way of deposition testimony of the hearing officer, counsel attempted to establish that objec- tions were made to the complained-of oral argument. Objections to oral argument made to an administrative agency may not be preserved by subsequent deposition testimony of persons or officials present at oral argument.

that the order was based upon counsel's remark rather than upon evidence in the agency record.

Pursuant to art. 4413(36), § 4.06(c), an existing automobile dealer may defeat an application for a new dealership if the existing dealer can establish:

1. the same line-make motor vehicle is then represented in the county in which the proposed dealership site is located, or in an area within 25 miles of the proposed dealership site, by a dealer who is in compliance with his franchise agreement with the manufacturer or distributor;

2. the existing dealer is adequately representing the manufacturer or distributor in the sale and service of its new motor vehicles; and

3. good cause is shown why an additional dealer license is not in the public interest.

Under § 4.06(c), it was Continental's burden to persuade the Commission and to obtain favorable findings concerning each element. It is plain that Continental failed in its burden to establish the elements of § 4.06(c) to deny Howdy's application. In truth, the Commission not only refused to find for Continental, but instead found affirmatively the converse of the requirements of § 4.06(c):

3. The Protestant is not adequately representing the Intervenor in the Austin, Texas market area in the sale and service of new Honda automobiles.

4. Good cause has not been shown why an additional Honda automobile dealer license in the Austin, Texas market area is not in the public interest.

5. Competition in the marketplace will be enhanced and furthered by the granting of the application.

Continental points out correctly that these findings (conclusions) are set forth in statutory terms. Continental then proceeds to argue that such findings are not supported by a statement of the underlying facts as mandated by Tex.Rev.Civ.Stat.

Ann. art. 6252–13a, § 16(b). This Court has reviewed the statement of underlying facts of the agency's order and has concluded that the agency's statement of underlying facts supports its affirmative conclusions four and five. In that connection, findings of fact two, seven, twenty-four and twenty-nine through thirty-one demonstrate that the Austin public would benefit by the establishment of another Honda dealership. Findings of fact eight, eleven and nineteen show the growth of Austin and findings five, ten and seventeen demonstrate the growth of South Austin where the Howdy dealership would be located. Findings thirteen, fourteen, sixteen, eighteen, and twenty show that Honda automobiles are popular and in high demand. The decreased registrations of Hondas in Travis County is attributable to the lack of supply of automobiles in times past because of export restrictions as shown in findings twenty-one and twenty-two.

Continental mounts its most vigorous attack upon the Commission's third conclusion which deals with Continental's representation of American Honda in the Austin market. Continental urges that the underlying findings show no inadequacy of representation, rather they show the dealership "is doing exceptionally well in representing American Honda in the Austin market." This claim finds support in Findings of Fact 19.

19. In terms of parts, service and facilities for Honda automobiles, Protestant is providing good representation for American Honda in the Austin market (469, 534–540). However, the Austin market simply is too large, and is expanding too rapidly, to be served adequately by one Honda dealer (359).

Findings twenty-one, twenty-two and twenty-three demonstrate that the inability of Continental to supply enough cars to meet the demands of customers was not its fault, but instead was due to the limited supply of Japanese automobiles available to this country.

It must be conceded that it is not at all clear that the underlying facts support the agency's third conclusion. This Court, however, need not further examine Continental's claim because § 4.06(c)* requires that Continental, as the existing dealer protestant, establish *all three elements* before Howdy's application may be denied. It is clear that Continental failed to discharge that burden in respect to conclusions four and five. Accordingly, it is immaterial that the agency's underlying statement of facts arguably does not support the third conclusion.

 Continental claims finally that the Commission's order is not supported by substantial evidence. An appeal from an order of the Texas Motor Vehicle Commission is governed by the substantial evidence rule. Because the agency order is presumed to be supported by substantial evidence, it was Continental's burden to overcome that presumption. *City of San Antonio v. Texas Water Commission, supra.* The burden upon one seeking to set aside an agency order is not impossible, although it certainly is not easy. *Browning-Ferris v. Texas Department of Health,* 625 S.W.2d 764 (Tex.App.1981, writ ref'd n.r.e.). Substantial evidence need not be much evidence, and although "substantial" means more than a mere scintilla, or some evidence, it is less than is required to sustain a verdict being attacked as against the great weight and preponderance of the evidence. *Mutual Bldg. and Loan Ass'n v. Lewis,* 572 S.W.2d 771 (Tex.Civ.App.1978, no writ); Reavley, *Substantial Evidence and Insubstantial Review in Texas,* 23 Sw.L.J. 239 (1969). If there existed substantial evidence which would have supported either the grant or denial of the application, the agency order should be sustained. *Texas Aeronautics Commission v. Braniff Airways, Inc.,* 454 S.W.2d 199 (Tex.1970).

 In the opinion of this Court, there is substantial evidence supporting the Commission's refusal to find for Continental on the elements of § 4.06(c). Moreover, there exists substantial evidence in support of the affirmative findings of the agency with respect to the elements of § 4.06(c). The record evidences that Austin is growing and the demand for Honda automobiles exceeds supply. In the Austin area there are two Toyota dealerships, two Datsun dealerships, two Volkswagen dealerships and two Subaru dealerships. American Honda will increase the supply of Honda automobiles to this country by forty percent and seeks to add 190 new dealerships in order to handle this increased supply. Competition in the Austin area will be enhanced by the addition of a second dealership in that customers will at least be given some choice in deciding with which dealer they want to deal.

The judgment is affirmed.