In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-16-00183-CV**
_____

**BENDERS LANDING ESTATES PROPERTY OWNERS ASSOCIATION, INC., Appellant**

**V.**

**LGI LAND, LLC, Appellee**

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 15-03-03011-CV**

**MEMORANDUM OPINION**

Appellant Benders Landing Estates Property Owners Association, Inc. (BLE POA) initiated suit against Appellee, LGI Land, LLC, by filing its application for temporary restraining order, temporary injunction, permanent injunction, and original petition. BLE POA filed its first amended petition, eliminating claims for breach of contract and injunctive relief, but still sought a declaratory judgment

1

pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code and attorney's fees. *See generally* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2015). BLE POA is the property owners association for the Benders Landing Estates community, and LGI is the property developer of that community. The dispute concerns the transfer of certain rights and obligations between the parties pursuant to a restrictive covenant and an instrument entitled Assignment of Developer's Rights.

On October 7, 2015, the trial court denied BLE POA's traditional motion for summary judgment and granted LGI's traditional motion for partial summary judgment. The trial court's order declared the Assignment was "valid and binding." BLE POA appeals the denial of its traditional motion for summary judgment. In two issues on appeal, BLE POA asks first, whether the trial court erred in denying its motion for summary judgment and second, whether the trial court abused its discretion by granting attorney's fees to LGI. We reverse and render in part and remand in part.

**Background**

As the property developer, LGI executed the Declaration of Covenants, Conditions and Restrictions for the Benders Landing Estates community on May 12, 2011, and filed the Declaration in the real property records on May 13, 2011. Certain

rights and powers would pass from LGI to BLE POA on the "Control Transfer Date," as set forth in article VII, section 7.01 of the Declaration. Section 7.01 provides in pertinent part, "Developer shall have, retain and[,] reserve certain rights as hereinafter set forth with respect to the Association from the date hereof, until . . . the Control Transfer [D]ate[.]" The Control Transfer Date is defined in article IV, section 4.02(b) as occurring "[a]t the discretion of the Developer or in any event at such time as eighty percent (80%) of the Lots in all sections of the Subdivision are conveyed by Developer . . . ." The parties agree that the Control Transfer Date described in the Declaration occurred on March 1, 2013, and the rights of LGI passed to BLE POA at that time.

The dispute arose following the execution of the Assignment of Developer's Rights by the parties on March 26, 2013. That document acknowledged the Control Transfer Date of March 1, 2013; however, that instrument also contained express language that the "Assignment shall be effective as the Control Transfer Date on March 1, 2013, regardless of the last date executed below." The Assignment attempts to reserve and carve-out rights to be held by LGI, while at the same time attempting to have BLE POA "grant" rights back to LGI that had already transferred to BLE POA. The Assignment states the "Assignor desires to assign all of its rights and powers under the Declarations (including these referenced in Article IV, Section

3

4.02(b) of the Declarations) to Assignee **except those rights reserved, carved out and excluded below**, and Assignee desires to accept the assignment thereof" (emphasis in original). The Assignment provides

> Assignor hereby assigns and transfers to Assignee all of the Assignor's remaining rights and powers (including, without limitation, the power to grant any consents and approvals) under the Declarations **except those rights specifically enumerated in "a." through "i." below,** and Assignee hereby accepts the assignment of Assignor's rights and powers under the Declarations. This Assignment intends to assign from Assignor to Assignee the full and complete power and authority which the Assignor has or may have under the Declarations, **except for and as to those reserved rights and carve-outs/exclusions, below**. This Assignment does not pass any liabilities from Assignor to Assignee that may have been incurred by Assignor prior to the effective date of this Assignment. **Assignee grants to Assignor, and consents to and approves Assignor's reservations, carve-outs and exclusions, and Assignor specifically accepts Assignee's grant, consent and approval and reserves unto itself the following rights and carves out and excludes each from this assignment[.]** (emphasis in original).

The Assignment goes on to list certain enumerated rights and powers in provisions "a" through "i" that LGI would continue to hold. The language contained in the Assignment is contrary to the Declaration, which provided that the rights and powers held by LGI transferred to BLE POA upon the Control Transfer Date.

BLE POA asserted that the rights of LGI automatically transferred to BLE POA on the Control Transfer Date of March 1, 2013. Accordingly, BLE POA argued in its Amended Motion for Summary Judgment that the Assignment was an improper reservation of rights that LGI no longer held, because they expired on March 1, 2013.

4

BLE POA further asserted that the reservations by LGI in the Assignment were an attempt to circumvent the provisions in the Declaration by reserving control after the Control Transfer Date, and the attempted reservations were void *ab initio*. Finally, BLE POA argued that by adding rights and powers into the Assignment, LGI attempted to amend the Declaration in violation of article IX, which outlines the amendment procedures, and the BLE POA's Articles of Incorporation.

LGI filed its traditional motion for partial summary judgment claiming the Assignment was a valid, enforceable contract and sought a declaration of the same. LGI's motion did not address the issue of attorney's fees, but rather asked the trial court to consider them separately, depending on the court's ruling on its summary judgment motion. BLE POA filed a traditional motion for summary judgment and an amended motion for summary judgment seeking a declaration from the trial court that provisions 1(a) through 1(i) of the Assignment are void *ab initio* and are of no force and effect and that the Control Transfer Date occurred on March 1, 2013.

## Standard of Review

We review a trial court's summary judgments *de novo*. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). When the parties file cross-motions for summary judgment and one motion was granted, but the other denied, the appellate court should determine all questions presented and may reverse the trial

court's judgment and render such judgment as the trial court should have rendered, including rendering judgment for the other movant. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988). In making its determination, the appellate court should review the summary judgment evidence presented by both sides. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious. *Id.* at 872. Moreover, "the appealing party must show it is error to base [summary judgment] on any ground asserted in the motion." *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). Additionally, we review a trial court's interpretation of restrictive covenants *de novo*. *Raman Chandler Props., L.C. v. Caldwell's Creek Homeowners Ass'n*, 178 S.W.3d 384, 390 (Tex. App.—Fort Worth 2005, pet. denied).

## Analysis

In its first issue, BLE POA argues the trial court erred when it failed to grant its motion for summary judgment.

The Declaration executed by LGI on May 12, 2013, and recorded on May 13, 2013, constitutes the original restrictive covenants for the real property involved in this case. The Assignment subsequently executed by the parties attempted to amend

6

and substantively alter the rights and powers under the Declaration and, unlike the original Declaration, the Assignment contained no expiration date. The plain meaning of the term "amend" is to change, correct, or revise. *Cont'l Cars, Inc. v. Tex. Motor Vehicle Comm'n*, 697 S.W.2d 438, 441 (Tex. App.—Austin 1985, writ ref'd n.r.e.). In theory, under the Assignment, LGI could retain the enumerated rights and powers in perpetuity, which directly contradicts the "Period of Developer's Rights and Reservations" contained in article VII, section 7.01 of the Declaration. The language of the Assignment would, if valid, broaden the powers of LGI to amend plats, annex property, and modify designated Reserves without further consent of BLE POA. Although styled as an "Assignment," the substance of the instrument would amend and contradict the material terms of the original Declaration.

BLE POA argues it is entitled to summary judgment based upon the original restrictive covenant and seeks a declaration that provisions 1(a)–1(i) of the Assignment are void *ab initio* and are of no force and effect and a declaration that the Control Transfer Date occurred on March 1, 2013. LGI, on the other hand, claims it is entitled to summary judgment based on the amendment contained in the Assignment, which LGI contends incorporates the theory of modification of the

7

original contract. *See Dyegard Land P'ship v. Hoover*, 39 S.W.3d 300, 308 (Tex. App.—Fort Worth 2001, no pet.).

"A declaration containing restrictive covenants in a subdivision defines the rights and obligations of property ownership, and the mutual and reciprocal obligation undertaken by all purchasers in a subdivision 'creates an inherent property interest possessed by each purchaser.'" *W. Hills Harbor Owners Ass'n v. Baker*, 516 S.W.3d 215, 220 (Tex. App.—El Paso 2017, no pet.) (quoting *Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 636 (Tex. 1987)). We apply the general rules of contract construction when construing restrictive covenants. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998); *Raman Chandler*, 178 S.W.3d at 391. In construing a restrictive covenant, the court's primary task is to determine the intent of its framers. *See Wilmoth v. Wilcox*, 734 S.W.2d 656, 658 (Tex. 1987).

"A subdivision developer is generally free to amend restrictions in covenants for the subdivision prior to the sale of lots in the subdivision, assuming the amendments do not violate public policy." *Youssefzadeh v. Brown*, 131 S.W.3d 641, 644 (Tex. App.—Fort Worth 2004, no pet.). "However, the sale of subdivision lots triggers any amendment mechanism set forth in the dedication." *Id.*; *Dyegard*, 39 S.W.3d at 313. "When the power to amend the land use restriction is reserved in the

developer, the amendment of a restrictive covenant must be in the precise manner authorized by the dedicating agreement." *Youssefzadeh*, 131 S.W.3d at 644–45; *Dyegard*, 39 S.W.3d at 313. The same "precise manner" requirement should be required when the amendment mechanism lies other than with the developer. *Youssefzadeh*, 131 S.W.3d at 645. "In order for a subsequent instrument to amend the original restrictive covenant, the instrument creating the original restrictions must establish both the right to amend such restrictions and the method of amendment." *Scoville v. SpringPark Homeowner's Ass'n, Inc.*, 784 S.W.2d 498, 504 (Tex. App.—Dallas 1990, writ denied); *see also City of Pasadena v. Gennedy*, 125 S.W.3d 687, 697–98 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (stating that a party attempting to rely on amendment to restrictive covenants had the burden to demonstrate that the deed restrictions were validly amended). Therefore, we must look to the Declaration and determine who has the right to amend the restrictions and the method for amending them; whether the amendment corrects, improves, or reforms the restrictions rather than destroying them; and whether the amendment is illegal or against public policy. *See Raman Chandler*, 178 S.W.3d at 390–91.

The Declaration contained two provisions for amendments. Article IX, section 9.03 governed amendments by LGI *prior* to the Control Transfer Date. Article IX, section 9.02 governed amendments by BLE POA. Specifically, article IX, section

9

9.03 of the Declaration provides in pertinent part, "The Developer shall have and reserves the right at any time and from time to time *prior to the Control Transfer Date*, without the joinder or consent of any Owner or other party, to amend this Declaration by an instrument in writing duly signed, acknowledged, and filed for record[.]" (emphasis added). LGI judicially admitted in its motion for partial summary judgment that the Control Transfer Date occurred on March 1, 2013. Thus, this amendment procedure would not be available to LGI pursuant to the plain language of the Declaration.

According to article IX, section 9.09 of the Declaration, "Upon the Developer's Assignment of its rights as of the Control Transfer Date to the Association, the Association shall be entitled to exercise all the rights and prerogatives of the Developer." Therefore, as of March 1, 2013, BLE POA was entitled to exercise all the rights and prerogatives of LGI. Accordingly, the amendment provision governing the Assignment is article IX, section 9.02 of the Declaration. That provision provides as follows:

> This Declaration may be amended or changed . . . by the written agreement or signed ballot of Owners (including the Developer) entitled to cast not less than two-thirds (2/3rds) of the votes of all of the Owners. If the Declaration is amended by a written instrument signed by those Owners entitled to cast not less than two-thirds (2/3rds) of all of the votes of the Owners of the Association, such amendment must be approved by said Owners within three hundred sixty-five (365) days of the date the first Owner executes such amendment. The date an

Owner's signature is acknowledged shall constitute prima facia [sic] evidence of the date of execution of said amendment by such Owner. Those Members (Owners, including the Developer) entitled to cast not less than two-thirds (2/3rds) of all of the votes of the Members of the Association may also vote to amend this Declaration, in person, or by proxy, at a meeting of the Members (Owners, including the Developer) duly called for such purpose, written notice of which shall be given to all Owners at least ten (10) days and not more than sixty (60) days in advance and shall set forth the purpose of such meeting. Notwithstanding any provision contained in the Bylaws to the contrary, a quorum, for purposes of such meeting, shall consist of not less than seventy percent (70%) of all Members (in person or by proxy) entitled to vote. Any such amendment shall become effective when an instrument is filed for record . . . accompanied by a certificate, signed by a majority of the Board of Directors, stating that the required number of Members (Owners, including the Developer) executed the instrument amending this Declaration[.]

Because the Declaration contains an amendment provision governing the manner and mechanism for making changes, any amendment to that restrictive covenant must be in the "precise manner" authorized by the Declaration. *See Youssefzadeh*, 131 S.W.3d at 645; *see also VICC Homeowners' Ass'n., Inc. v. Los Campeones, Inc.*, 143 S.W.3d 832, 836–37 (Tex. App.—Corpus Christi 2004, no pet.) (holding trial court did not err in declaring Amended Covenants void and noting there was no evidence in the record to indicate the required procedures for amending were followed). There is no question that the Assignment constituted an attempted amendment to the Declaration. Under the original Declaration, the time LGI retained certain rights and powers was governed and limited by that instrument to the Control

11

Transfer Date of March 1, 2013. Additionally, the original Declaration clearly delineated the rights and responsibilities of LGI and BLE POA, and the Assignment changed which party held those rights.

Despite LGI's assertion that the Assignment is a valid contract and that it became effective on the Control Transfer Date, LGI has not proven the amendments followed the "precise manner" authorized by the Declaration. The Declaration provided two options for the parties to amend under article IX, section 9.02. Specifically, the applicable provision mandated that any changes to the Declaration be undertaken by either: 1) a written agreement or signed ballot approved by two-thirds of the members; or by 2) a vote by two-thirds of the property owners at a duly called meeting for that purpose. If the parties chose to amend by a vote, the Declaration dictates "[a]ny such amendment shall become effective when an instrument is filed for record . . . accompanied by a certificate, signed by a majority of the Board of Directors, stating that the required number of Members (Owners, including the Developer) executed the instrument amending this Declaration [.]" The summary judgment record evidence submitted by BLE POA in support of its motion for summary judgment conclusively proves that the required procedures of either amendment mechanism provided for in section 9.02 of the Declaration were not complied with before executing the Assignment. There is no written agreement or

ballot signed by the requisite number of owners, nor is the Assignment accompanied by the necessary certificate signed by the majority of the Board of Directors stating that a required number of members executed the instrument amending the Declaration following a vote.

The evidence in the record establishes the restrictive covenants contained in the original Declaration included express amendment procedures. The parties agree that the Control Transfer Date was March 1, 2013. Because the Assignment constituted an amending instrument to a restrictive covenant as a matter of law, the parties could only amend the Declaration in the "precise manner" authorized by the original Declaration. Accordingly, we hold the Assignment of Developer's Rights is void *ab initio*. *See Youssefzadeh*, 131 S.W.3d at 645. Therefore, the trial court erred when it granted the amended partial summary judgment of LGI and denied the motion for summary judgment of BLE POA. We sustain BLE POA's first issue.

Because of our disposition of the first issue, LGI is no longer a prevailing party. We sustain BLE POA's second issue and reverse that part of the trial court's judgment awarding attorney's fees to LGI and remand this issue to the trial court for further proceedings if necessary. *See* Tex. Civ. Prac. Rem. Code Ann. § 37.009 (providing for reasonable and necessary attorney's fees as are equitable and just in declaratory judgment actions).

13

## Conclusion

We conclude provisions 1(a)–1(i) of the Assignment in this case constitute an improper amendment to a restrictive covenant, specifically the Declaration. Accordingly, provisions 1(a)–1(i) of the Assignment are void *ab initio* and of no force and effect. It is undisputed that the Control Transfer Date is March 1, 2013. The trial court erred in denying BLE POA's traditional motion for summary judgment and in granting LGI's traditional motion for partial summary judgment. We reverse the final judgment dated February 26, 2016, and render judgment that provisions 1(a)–1(i) of the Assignment in this case constitute an improper amendment to the restrictive covenants in the Declaration and provisions 1(a)–1(i) of the Assignment are void *ab initio* and of no force and effect. We reverse that portion of the judgment awarding attorney's fees and remand that issue to the trial court for further proceedings consistent with this opinion.

REVERSED AND RENDERDED IN PART, REMANDED IN PART.

_____
CHARLES KREGER
Justice

Submitted on October 20, 2017
Opinion Delivered March 8, 2018

Before Kreger, Horton, and Johnson, JJ.

14